UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA- EASTERN DIVISION

| | | |
|---|---|---|
| JUDY ANN LITTLEJOHN, | ) | ED CV 07-1614-SH |
| Plaintiff, | ) | |
| | ) | MEMORANDUM DECISION |
| v. | ) | AND ORDER |
| | ) | |
| MICHAEL J. ASTRUE, | ) | |
| Commissioner of Social Security, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

## PROCEEDINGS

This matter is before the Court for review of the decision by the Commissioner of Social Security denying plaintiff's application for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI"). Pursuant to 28 U.S.C § 636(c), the parties have consented that the case may be handled by the undersigned. The action arises under 42 U.S.C § 405(g), which authorizes

1

the Court to enter judgment upon the pleadings and transcript of the record before the Commissioner. The plaintiff and the defendant have filed their pleadings, the defendant has filed the certified transcript of record, and the parties have filed a Joint Stipulation. After reviewing the matter, the Court concludes that the Decision of the Commissioner should be affirmed.

## BACKGROUND

Plaintiff filed an application for DIB and SSI in March of 2002, alleging that she became disabled on February 15, 2002, due to effects from a prior skull fracture, headaches, high blood pressure, and seizures. Plaintiff's application was denied initially and on reconsideration.

On September 19, 2002, plaintiff requested a hearing to review the denial of her application for DIB and SSI (Administrative Record ("AR") 92), and was afforded a hearing before an Administrative Law Judge ("ALJ") on November 26, 2003 (AR 99). A supplemental hearing was scheduled for June 2, 2004 (AR 113), but plaintiff failed to appear. The ALJ issued a Notice of Dismissal dated July 29, 2004 (AR 76-79). Since plaintiff showed good cause for her failure to appear at the supplemental hearing, the ALJ vacated the Order of Dismissal (AR 80).

Following another hearing before the ALJ on August 25, 2004, the ALJ issued an unfavorable Decision on September 30, 2004 (AR 11-22). The ALJ found plaintiff's allegations regarding her limitations were not totally credible and that plaintiff could perform a significant number of jobs in the national economy (AR 21). On October 29, 2004, plaintiff filed a Request for Review of the Hearing Decision (AR 9). The Appeals Council denied review of the decision (AR 5).

Plaintiff commenced a civil action that resulted in a Judgment (AR 267) and a Memorandum Decision and Order (AR 268-70). The Order of the United

States Magistrate Judge directed that the ALJ further develop the record and obtain the complete treatment records from plaintiff's treating physician. Id. The Appeals Council remanded the case back to the ALJ for further proceedings consistent with the Order of this Court (AR 265-66).

On February 7, 2007, a remand hearing was held before another ALJ, in addition to a supplemental hearing on July 18, 2007. On October 3, 2007, the ALJ issued an unfavorable Decision (AR 245-57). The ALJ found that plaintiff's complaints regarding her seizures were not credible and that plaintiff's functional limitation did not preclude her from performing past relevant work (AR 256). This action followed.

Plaintiff makes six challenges to the ALJ's determination. Plaintiff alleges that the ALJ erred by failing: (1) to consider the State Agency psychiatrist's findings; (2) to properly develop the record regarding plaintiff's high school records; (3) to properly determine whether plaintiff's impairment meets or equals a "listed impairment;" (4) to properly consider the consultative examiner's opinion; (5) to properly determine whether plaintiff could perform her past work as a produce sorter; and (6) to pose a complete hypothetical question to the vocational expert. Each of plaintiff's contentions will be addressed in turn.

## **DISCUSSION**

Under 42 U.S.C. § 405(g), this Court reviews the Commissioner's decision to determine whether it is free from legal error and supported by substantial evidence in the record as a whole. Orn v. Astrue, 495 F.3d 625, 630 (9th Cir. 2007). Substantial evidence must be more than a mere scintilla, but not necessarily a preponderance. Connett v. Barnhart, 340 F.3d 871, 873 (9th Cir. 2003) (citation omitted). This Court cannot disturb the Commissioner's findings if those findings are supported by substantial evidence, even though other evidence may exist which support's plaintiff's claim. See Torske v.

Richardson, 484 F.2d 59, 60 (9th Cir. 1973), cert. denied, Torske v. Weinberger, 417 U.S. 933 (1974); Harvey v. Richardson, 451 F.2d 589, 590 (9th Cir. 1971).

### ISSUE NO. 1: The ALJ properly considered the State Agency psychiatrist's findings.

Plaintiff contends that the ALJ ignored the findings of Dr. H. N. Hurwitz, the State Agency psychiatrist, without comment and consideration. Plaintiff argues that the ALJ may not ignore the findings of State agency physicians and must consider such findings as opinion evidence. Plaintiff further contends that the ALJ must explain the weight given to such opinion evidence.

Defendant argues that the ALJ's failure to discuss Dr. Hurwitz's findings does not equate to a failure to consider the findings. Defendant contends that the ALJ properly analyzed the evidence in this case, as evidenced by the consistent findings between the ALJ and Dr. Hurwitz regarding plaintiff's residual functional capacity ("RFC").

Plaintiff is correct in asserting that the ALJ must explain in the decision the weight given to opinion evidence of State agency physicians. See 20 C.F.R. § 416.927(f)(2)(ii). However, the ALJ need not discuss every piece of evidence presented. See Vincent v. Heckler, 739 F.2d 1393, 1394-95 (9th Cir. 1984). Rather, the ALJ must explain why "significant probative evidence has been rejected." Id. (citation omitted). Thus, where the evidence was neither significant, nor probative, an ALJ's failure to discuss the evidence does not constitute a failure to consider the evidence.

Here, the findings of Dr. Hurwitz were not rejected in the ALJ's determination of plaintiff's claim. Although the ALJ did not specifically refer to Dr. Hurwitz's report, the ALJ did specifically discuss Dr. Clifford Taylor's findings, which were consistent with Dr. Hurwitz's findings. (AR 254-55, 363). Both doctors found that plaintiff suffered from depressive disorder and reduced

intellectual functioning. (AR 358-64, 393-406). Both doctors also found mild to moderate impairment of plaintiff's ability to perform activities of daily living, maintain social functioning, and maintain concentration, persistence, or pace. Id. Based on these findings, the ALJ concluded that plaintiff could perform "what are essentially basic mental work-related activities on a regular full time basis." (AR 255). Since Dr. Hurwitz's findings were consistent with Dr. Taylor's findings, which were considered in the ALJ's Decision denying benefits, this Court finds that the ALJ properly considered Dr. Hurwitz's findings.

**ISSUE NO. 2: The ALJ properly developed the record regarding plaintiff's high school records.**

Plaintiff contends that the ALJ failed to properly develop the record when the medical expert ("ME") raised a question regarding plaintiff's IQ during plaintiff's remand hearing. Plaintiff argues that the ALJ should have asked plaintiff to obtain her high school records. Defendant argues that the ALJ fulfilled his duty to fully and fairly develop the record.

Generally, the ALJ has an independent "duty to fully and fairly develop the record to assure that the claimant's interests are considered." Smolen v. Chater, 80 F.3d 1273, 1288 (9th Cir. 1996) (quoting Brown v. Heckler, 713 F.2d 441, 443 (9th Cir. 1983)). The ALJ's duty to develop the record is triggered when there is ambiguous evidence or when the record is inadequate to allow for proper evaluation of the evidence. Tonapetyan v. Halter, 242 F.3d 1144, 1150 (9th Cir. 2001) (citations omitted). The ALJ's duty to develop the record fully is also heightened where the claimant may be mentally ill and thus unable to protect his or her own interests. Id. The ALJ can discharge this duty in several ways, including but not limited to: subpoenaing the claimant's physicians, submitting questions to the claimant's physicians, continuing the hearing, or keeping the record open after the hearing to allow supplementation of the record.

Id.

On the other hand, the ALJ does not have a duty to develop the record with regard to issues that the plaintiff herself has never raised. Falk v. Comm'r of the Soc. Sec. Admin., 282 F. Supp. 2d 1206, 1213 (D. Kan. 2003). In order to require further investigation into plaintiff's IQ, plaintiff must raise the issue to be developed, and show that it is, on its face, substantial. See Hawkins v. Chater, 113 F.3d 1162, 1167 (10th Cir. 1997) (citation omitted). Specifically, the plaintiff has the burden to make sure there is, in the record, evidence sufficient to suggest a reasonable possibility that a severe impairment exists. Id. If the plaintiff does so, the ALJ must exercise "reasonable good judgment" to "fully and fairly develop the record as to material issues." Id. at 1168.

In Falk, the plaintiff asserted that the ALJ erred in failing to develop an adequate record because the ALJ did not obtain a consultative psychological examination of plaintiff when documents in the administrative record reflected brief references from medical providers that the plaintiff may suffer from depression and somatization disorder. Falk, 282 F. Supp. 2d at 1212. The Falk court noted that the plaintiff did not identify or otherwise refer to depression, somatization disorder or any other mental health issue as a cause of her disability during the hearing before the ALJ or in her application for benefits. Id. at 1213. The court found that because plaintiff made no formal contention of mental or emotional impairment, isolated treatment notations about the plaintiff's mental health were not sufficient to raise suspicion of a mental health disorder. Id.

Similarly, in the instant case, the plaintiff did not identify either in her hearing or in her application for benefits that her IQ was a cause of any of her disabilities. Instead, plaintiff attributed the cause of her disability to a severe skull fracture that occurred while she was a teenager. (AR 470). Additionally, when the ME questioned the plaintiff about her high school education during the remand hearing, plaintiff stated that she attended regular classes, that her favorite

1 class was English, and that her grades in high school were C's (AR 481-82).
2 Plaintiff made no mention that her IQ level contributed to her disabilities.

3 Furthermore, the ALJ properly concluded that plaintiff's IQ level did not
4 meet or equal a listed mental impairment. For instance, a claimant can meet the
5 listed impairment for mental retardation if he or she has a verbal, performance or
6 full scale IQ of sixty through seventy, along with one or more additional
7 impairment, or a full scale IQ of fifty-nine or less. 20 C.F.R. Pt. 404, Subpt. P,
8 App 1, § 12.05 (2009). Here, plaintiff's verbal IQ score is eighty, her
9 performance IQ score is seventy-six, and her full scale IQ score is seventy-six
10 (AR 361).

11 Moreover, the ALJ specifically addressed plaintiff's IQ in his decision.
12 The ALJ found plaintiff's "reduced cognitive functioning has been of long
13 standing." (AR 250). However, the ALJ also noted that there was "no indication
14 [plaintiff's cognitive functioning] deteriorated on or about the alleged disability
15 onset date or any time thereafter, and it does not cause more than minimal
16 limitation in the [plaintiff's] ability to perform basic mental work activities . . . ."
17 (AR 250). Thus, the Court finds that the record contained sufficient medical
18 evidence for the ALJ to make an informed decision as to plaintiff's alleged
19 mental impairment, and that the ALJ did not err by failing to supplement the
20 record with plaintiff's high school records.

## ISSUE NO. 3: The ALJ properly determined that Plaintiff's impairments were not equivalent to a listed impairment.

24 Plaintiff contends that the ALJ failed to provide any analysis as to why
25 plaintiff's impairments, either on its own or in combination, were not equivalent
26 to any listed impairment. On the other hand, defendant argues that the plaintiff
27 did not meet her burden to prove that plaintiff's impairments were equivalent to
28 a listed impairment .

The Commissioner is required to consider plaintiff's impairments in light of the listed impairments. 20 C.F.R. Pt. 404, Subpt. P, App. 1 (2009). The listings sets forth certain impairments which are presumed to be of sufficient severity to prevent the performance of work. 20 C.F.R. §§ 404.1525(a), 416.925(a) (2009).

Plaintiff's impairment need not precisely meet the criteria of the listing in order to obtain benefits. If plaintiff's impairment or combination of impairments is medically equivalent to one in the listing, disability is presumed and benefits are awarded. 20 C.F.R. §§ 404.1520(d), 416.920(d) (2009); Barker v. Sec'y of Health & Human Servs., 882 F.2d 1474, 1477 (9th Cir. 1989); Bowen v. Yuckert, 482 U.S. 137, 141-42 (1987).

To determine medical equivalence, the Commissioner compares the symptoms, signs, and laboratory findings concerning the alleged impairment with the medical criteria of the listed impairment. 20 C.F.R. §§ 404.1426(a), 416.926(a) (2009). Medical equivalence will be found "if the medical findings are at least equal in severity and duration to the listed findings." 20 C.F.R. § 404.1526 (2009). The decision is based solely on the medical evidence, which must be supported by medically acceptable clinical and laboratory diagnostic techniques. 20 C.F.R. §§ 404.1426(b), 416.926(b) (2009). A boilerplate finding is insufficient to support a conclusion that a claimant's impairment is not equivalent to a listed impairment. See Marcia v. Sullivan, 900 F.2d 172, 176 (9th Cir. 1990). However, the claimant must proffer a theory, plausible or other, as to how his combined impairments equal a listed impairment. See Lewis v. Apfel, 236 F.3d 503, 514 (9th Cir. 2001).

In both Marcia and Lewis, a claimant for social security disability benefits sought judicial review of an ALJ's finding that the claimant's combination of impairments did not meet or equal a listed impairment. See Marcia., 900 F.2d at 175; Lewis, 236 F.3d at 509. In Marcia, the claimant presented evidence that the

combination of his impairments established medical equivalence. <u>Marcia</u>., 900 F.2d at 176. Specifically, the claimant presented evidence of an alternative diagnostic test to establish the presence of a symptom of a listed impairment. <u>Id.</u> With respect to equivalence, the ALJ merely stated, "[t]he claimant has failed to provide evidence of medically determinable impairments that meet or equal the Listings . . . ." <u>Id.</u> The court held that the ALJ must explain adequately his evaluation of alternative tests and the combined effects of the impairments. <u>Id.</u>

In contrast, in <u>Lewis</u>, the claimant failed to present evidence as to how his combination of seizure disorder and mental retardation combined to equal a listed impairment. <u>Lewis</u>, 236 F.3d at 514. The claimant did not point to evidence that showed his seizures lowered his IQ. <u>Id.</u> Additionally, the claimant failed to present evidence that his mental retardation exacerbated his seizure disorder. <u>Id.</u> Thus, even though the ALJ did not discuss the combined effects of the claimant's impairments, the court held that the ALJ did not err in concluding that Lewis's conditions did not equal a listed impairment. <u>Id.</u>

Here, like the claimant in <u>Lewis</u>, plaintiff failed to proffer a theory, plausible or otherwise, as to how her several impairments combined to equal a listed impairment. As such, the ALJ concluded that the frequency of plaintiff's seizures did not meet the requirements of sections 11.02 (convulsive epilepsy) and 11.03 (nonconvulsive epilepsy) of the listed impairments, and that the combination of plaintiff's impairments did not equal a listed impairment (AR 250). This boilerplate finding is appropriate since plaintiff failed to set forth evidence that would allow the ALJ to conclude that plaintiff's combination of impairments could equal a listed impairment. Thus, the ALJ properly determined that plaintiff's impairments, individually or in combination, did not equal a listed impairment.

**ISSUE NO. 4: The ALJ properly considered the consultative examiner's**

**opinion.**

Plaintiff contends that the ALJ failed to consider Dr. Robert A. Moore's evaluation wherein Dr. Moore determined that plaintiff could not climb, balance, work at heights, work around moving machinery, operate a motor vehicle, or use power tools (AR 377). Plaintiff contends that the ALJ did not discuss the limitations noted by Dr. Moore and also failed to include such limitations in the plaintiff's RFC. Plaintiff asserts that because the ALJ failed to discuss the limitations specified by Dr. Moore, the ALJ implicitly rejected Dr. Moore's findings without providing the requisite reasons.

Defendant contends that the ALJ considered plaintiff's limitations and appropriately included such limitations in plaintiff's RFC. Defendant also contends that any error, if at all, was harmless.

In the instant matter, the ALJ did in fact consider plaintiff's limitations as determined by Dr. Moore. After careful consideration of the entire record, the ALJ found that plaintiff has never lost for any significant period of time, the RFC to perform light work "except any significant walking on uneven ground, balancing, or climbing of ladders, ropes or scaffolding, or any frequent stopping, crouching, kneeling, crawling, or climbing." (AR 250). This finding parallels Dr. Moore's finding that the plaintiff could not climb, balance, or work at heights.

Furthermore, an ALJ does not need to discuss every piece of evidence. See Howard v. Barnhart, 341 F.3d 1006, 1010 (9th Cir. 2003) ("in interpreting the evidence and developing the record, the ALJ does not need to discuss every piece of evidence"). Here, while the ALJ did not specifically mention plaintiff's restrictions against working around moving machinery, operating a motor vehicle, or using powers tools, the ALJ in fact did specify in plaintiff's RFC that plaintiff "has been able to work except for the need to avoid seizure-related hazards." (AR 255). Again, this finding parallels Dr. Moore's finding that the

1  plaintiff, "[b]ecause of her seizures, . . . cannot work around moving machinery
2  or operate a motor vehicle. She cannot use power tools." (AR 377). Therefore,
3  even though the ALJ did not specifically list the specific seizure-related hazards
4  that plaintiff should avoid, the ALJ did consider – and did not reject – Dr.
5  Moore's evaluation and concluded that plaintiff did indeed "need to avoid
6  seizure-related hazards." (AR 255).

**ISSUE NO. 5: The ALJ properly determined that plaintiff could perform her past work as a produce sorter.**

Plaintiff contends that because plaintiff's limitations as noted by Dr. Moore were not included in her RFC, the vocational expert ("VE") was unable to properly evaluate whether plaintiff could perform her past work as a produce sorter. Specifically, plaintiff relies on the fact that the VE noted during the administrative hearing that the job of a produce sorter requires the use of moving machinery (AR 492), a limitation noted by Dr. Moore.

Defendant contends that plaintiff failed to carry her burden of proving that she was unable to perform her past work. Defendant also contends that substantial evidence supports the ALJ's determination that plaintiff could perform her past relevant work.

As previously discussed, the ALJ considered Dr. Moore's evaluation of plaintiff, and plaintiff's limitations were included in her RFC. Thus, the remaining issue is whether the ALJ properly determined that plaintiff could perform her past work as a produce sorter.

Plaintiff's relies on the Dictionary of Occupational Titles ("DOT") to define the job requirements of a produce sorter. According to the DOT, a produce sorter "[s]egregates produce on conveyer belt *or table* . . . and places produce *in containers or* on designated conveyors." DICOT 529.687-186 (4th ed. 1991) (emphasis added). Thus, plaintiff's performance of past work as a

produce sorter could be carried out on a table, instead of on a conveyer belt, and would not require the performance of activities precluded by plaintiff's RFC.

Significantly, the DOT additionally provides: "Moving Mech. Parts: Not Present – Activity or condition does not exist." <u>Id.</u> This fact, coupled with plaintiff's failure to make reference to the use of conveyor belts in her past work as a produce sorter led the ALJ to conclude that conveyor belts are not material to the performance of plaintiff's past work as a produce sorter (AR 257).

Even if the conveyer belt is considered moving machinery – as the VE found – the VE determined that plaintiff could perform her past work as a vegetable sorter "because a conveyor belt is not particularly fast-paced. It's moving machinery, but . . . the vegetable sorter position would be appropriate." (AR 492). After considering this testimony, the ALJ concluded that based on plaintiff's RFC (which included Dr. Moore's limitations) and the job requirements for a produce sorter, plaintiff would be capable to perform her past work as a produce sorter (AR 256-57). Thus, substantial evidence exists in the record to support the ALJ's finding that plaintiff could perform her work as a produce sorter.

**ISSUE NO. 6: The ALJ posed a complete hypothetical question to the vocational expert.**

Plaintiff's final contention is that the ALJ failed to pose a complete hypothetical question to the vocational expert by failing to mention plaintiff's limitations as determined by Dr. Hurwitz. Defendant contends that the ALJ was not required to include in the hypothetical question limitations that were greater than the functional limitations supported by medical evidence.

In order for the vocational expert's testimony to constitute substantial evidence, the hypothetical question posed must "consider all of the claimant's limitations." <u>Andrews v. Shalala</u>, 53 F.3d 1035, 1044 (9th Cir. 1995). However,

the ALJ is not required to include limitations for which there was no evidence. See Osenbrock v. Apfel, 240 F.3d 1157, 1164-65 (9th Cir. 2001) (ALJ is not bound to accept as true the restrictions set forth in a hypothetical if they were not supported by substantial evidence).

Dr. Hurwitz found that plaintiff was moderately limited as it pertains to difficulties in maintaining social functioning and difficulties in maintaining concentration, persistence, or pace. (AR 403). Here, the ALJ inquired of the VE as to whether a person who "could not . . . work around hazardous or *fast-paced machinery* . . . could do *simple repetitive tasks* . . . [and] *should not supervise others*," amongst other limitations, could perform her past relevant work. (AR 491-92) (emphasis added). The hypothetical posed specifically addressed plaintiff's moderate limitations with social functioning and concentration, persistence, and pace. Thus, contrary to plaintiff's assertion, the hypothetical question posed to the VE set out of plaintiff's limitations and restrictions as determined by Dr. Hurwitz.

## **ORDER**

For the foregoing reasons, the decision of the Commissioner is affirmed and plaintiff's Complaint is dismissed.

**DATED:** March 13, 2009

/ s /
_____
STEPHEN J. HILLMAN
UNITED STATES MAGISTRATE JUDGE